UNITED STATES v. HALL et al.

(Circuit Court of Appeals, First Circuit. May 15, 1894.)

No. 85.

1. NAVIGABLE WATERS—OBSTRUCTION BY SUNKEN VESSEL — COMPELLING REMOVAL.

Owners of a vessel, who scuttle and sink her in a harbor while on fire, for the purpose of saving her rigging and spars and abandoning her to the underwriters, may be compelled to remove the hull, as an obstruction to navigation, under Act Sept. 19, 1890, § 10.

2. APPEAL—REHEARING.

A rehearing will not be granted, ordinarily, for causes not brought to the attention of the court on the original argument, or by the petitioner's brief.

Appeal from the Circuit Court of the United States for the District of Maine.

This was a suit by the United States against Hudson G. Hall and others to compel removal of an obstruction to navigation. The circuit court dismissed the bill, and a decree for defendants was entered thereon. The United States appealed.

Isaac W. Dyer, for the United States.

William H. Folger and Benjamin Thompson, for appellees.

Before PUTNAM, Circuit Judge, and NELSON and ALDRICH, District Judges.

ALDRICH, District Judge. This is a bill in equity based upon the act of congress of September 19, 1890 (26 Stat. 426), and instituted under the direction of the attorney general of the United States, to compel the defendants to remove the hull of a vessel, which, it is claimed, exists as an obstruction to navigation, in Rockland harbor, on the coast of Maine, and comes by appeal from the circuit court for that district.

The facts are, in substance, as follows: On the 8th of February, 1893, the three-masted and double-decked schooner, William H. Jones, sailed from Rockland, with a cargo of lime, bound for New York. The next morning, when about 40 miles out, it was discovered that her cargo was on fire, when the vessel was put about, sealed, and headed for the home port, where she might lay at rest in quiet water, and the chances of saving the cargo and vessel be thereby promoted. She proceeded under sail on the homeward voyage as far as Seal harbor, reaching that port about 1 a. m. the following morning, and from thence was towed into Rockland harbor, and anchored off the breakwater, and more carefully sealed, that the fire might be smothered. A little later she was taken to the northerly part of the harbor, a little off the main channel, inside the breakwater, and anchored at a point used for navigation by the lighter class of vessels, and for winter anchorage. At the end of 21 days her cabin doors were opened, but again carefully sealed; and, with careful watching, she remained sealed until March 21st (38 days in all), when, as it was supposed the fire was smothered, arrangements were made to discharge her cargo. Between 3 and 4 o'clock of the same day, from the internal progress of the fire, and without warning, the mizzen mast fell, tearing up the deck, and breaking in the after house. Some of the owners were immediately called on board, and after consultation the vessel was scuttled at the place of anchorage, in 13 or 14 feet of water; the purpose being, according to the testimony of one of the defendants, to save the rigging and spars, and abandon the vessel to the underwriters. She was afterwards condemned by an underwriter's survey, sold at auction, and bought in by the owners, who are the defendants in this proceeding, who stripped and abandoned her where she was anchored and scuttled, and where she now remains as an obstruction to anchorage and navigation.

The evidence of the defense tends to show that after the fall of the mast the vessel could not have been towed to deep water, or left to drift into shoal water with the wind, without hazard to the property of others. But such hazard would not attach to the vessel lying and burning at anchor. The scuttling, therefore, was not to avoid peril, or to save the property of others, but to save the rigging, spars, etc., to the owners. From the beginning the effort was to save the property as a whole, and the harbor might well be used in a reasonable manner to that end; but when it was discovered that the vessel and cargo could not be saved, using the harbor of refuge as a scuttling place for the hull, in order to make the slight pecuniary saving which would result from stripping the vessel, under the circumstances of this case, was an unreasonable use of the public waters, and upon the principle of decided cases, involving analogous questions (Georgetown v. Alexandria Canal Co., 12 Pet. 91, 97; Rex v. Ward, 4 Adol. & E. 384. See, also, Bruckelsbank v. Smith, 2 Burrows, 656; Steamboat Co. v. Munson, 117 Mass. 34; Rex v. Watts, 2 Esp. 675; White v. Crisp, 10 Exch. 318, 2 Hawk. P. C. c. 75, § 11; 1 Russ. Cr. (9th Ed.) 532; Wood, Nuis. §§ 481–483; Gould, Waters, §§ 121–128; Ang. Tide Waters, pp. 111, 113, 115;

Lord Hale's Treatise, De Portibus Maris, c. 7; Harg. Law Tracts, p. 85), the obstruction resulting would constitute a nuisance at the common law, removable upon information by the attorney general.

The defendants also contend that there was a chance, and perhaps a probability, that the vessel would have sunk before she could have been towed either to shoal or deep water; but the voluntary and deliberate act of the defendants, in scuttling her, relieves us from the consideration of questions which might arise from such conditions. We are therefore not called upon to determine where the responsibility would rest in a case where the vessel was being removed from her anchorage and place of refuge to a point where the hull would not be an obstruction to navigation, and, while the owners were prosecuting such efforts, and in the exercise of due care, the vessel stranded, or sunk in navigable waters. The evidence in the cause at bar does not present a case of inevitable accident or misfortune, such as relieves the owner from responsibility in respect to the obstruction, nor does the evidence present an emergency which justified the scuttling of the vessel at the time and place, as an act incident to the right of navigation. As has been said, she might have been left at anchor without danger to other property than that of the owners; and it is not clear that she might not have burned through and filled sufficiently to extinguish the fire without sinking, in which event she could have been towed to nonnavigable waters and broken up, or taken to deep water and sunk. It is apparent from the evidence that the prime motive of the owners, in scuttling the vessel at the particular time and place, was to save the rigging and the spars, which otherwise would have burned with the cargo. It is also apparent that the act was voluntary and deliberate, and it is quite immaterial whether, as contended by the plaintiff, the purpose was to turn her over to the government, and cast the burden of removal thereon, or, as conceded by the defense, to abandon her to the underwriters.

Some obligation rests upon the government to keep the harbors clear for public use, and the obligation rests upon each individual member of the public, exercising the right of navigation, to have reasonable regard for public rights, as well as the common and equal rights of others having occasion to use the public waters. In other words, he must not act with reference to his own pecuniary advantage alone. While members of the public may use the harbor as a place of refuge and greater safety for the vessel and cargo in case of necessity and distress, they may not, under the circumstances disclosed by the record in this case, use it as a scuttling place for the hull, that the rigging may be saved. As has been said, such is not a right incident to the right of navigation; and if, under such circumstances, the owner sees fit to scuttle his vessel, that the wreck may be stripped, he is bound to remove the obstruction, which, for his own slight pecuniary advantage, he voluntarily creates.

In our view, section 10 of the act of September 19, 1890, was intended to apply to all obstructions of a permanent character not

affirmatively authorized by law, willfully, wantonly, carelessly, or voluntarily created in the navigable waters, over which the United States has jurisdiction, not covered by the specific provisions of the preceding sections in the same chapter; and it follows from this construction that hulls of vessels sunk in harbors not through perils of the sea, but by voluntary act of owners or their authorized agents, are obstructions, within the meaning of this section of the statute. It is not quite clear whether the court below, holding this view of the statute, determined the cause, and dismissed the bill upon findings of fact against the government, or whether the order of dismissal resulted from construing the statute as not covering obstructions of the character disclosed by the record; but this is perhaps immaterial, for in either view it results that the decree of the circuit court must be reversed.

The decree of the circuit court is reversed, and the case is remanded, with directions to enter a decree in accordance with the views herein expressed.

---

### On Rehearing.

#### (June 14, 1894.)

PER CURIAM. The court has duly considered the petition for a rehearing filed in this cause by the appellees under rule 29, 47 Fed. xiii. The causes assigned in the petition, numbered 1 to 5, inclusive, were not brought to the attention of the court at the argument, or by appellees' brief. To permit them to be argued now would split up the case in a manner which the proper progress of suits does not ordinarily allow of. Extreme cases may arise where this may be done, but this is not one of them, though it might be if this procedure was under the criminal provisions of the statutes, or if the joinder of defendants involved, as a practical result, a gross injustice. The remaining causes were fully considered by the court before its conclusion was announced.

Ordered that, as none of the judges who concurred in the judgment in this case desire that the petition for a rehearing be granted or argued, the petition is denied, and the mandate may issue forthwith.