UNITED STATES v. BRIDGEPORT TOW-ING LINE, Inc.

(District Court, D. Connecticut. January 22, 1926.)

No. 1812.

1. Navigable waters ⬅26(1)—Government held not entitled to injunction to compel removal of obstruction in navigable waters caused by negligent sinking of wreck during attempted salvage (Comp. St. §§ 9910, 9917).

Government *held* not entitled, under Act March 3, 1899, §§ 10, 12 (Comp. St. §§ 9910, 9917), to mandatory injunction to compel removal of obstruction in navigable waters, caused by sinking of wreck which defendant was attempting to salvage, due to defendant's negligence.

2. Navigable waters ⬅26(1).

Comp. St. §§ 9910, 9917, authorizing injunction to compel removal of obstruction of navigable waters, *held* inapplicable to case of accident or negligence, as "creation of obstruction" means consciously directed action.

In Equity. Action by the United States against the Bridgeport Towing Line, Inc., to procure a mandatory injunction directing defendant to remove a certain obstruction in an anchorage basin. Judgment dismissing the bill of complaint.

John Buckley, U. S. Atty., and John A. Danaher, Asst. U. S. Atty., both of Hartford, Conn.

Carl Foster, of Bridgeport, Conn., for defendant.

THOMAS, District Judge. This is an action to procure a mandatory injunction directing the defendant to remove a certain obstruction existing in the 12-foot anchorage basin near Yellow mill pond in Bridgeport. From the stipulated facts it appears that on March 4, 1925, the canal boat Marion, the property of one Stephen J. Horkay, was beached on the flats west of the main channel and about 800 feet southerly of the Bridgeport inner beacon. On March 6, Horkay surrendered his permanent enrollment papers to the collector of customs of the port of New York and withdrew the commander and his other agents from the craft. On March 13, the defendant took possession of the wreck, raised her, and towed her to the flats near the entrance to Yellow mill pond, a distance of about one-half mile from the point where she had been beached, to a point on an avenue of commerce and intercourse over which the United States has jurisdiction.

The purpose of removing the Marion was to conduct salvage operations. After the craft had reached the point aforementioned, and before salvage operations could be completed, the craft slipped from its position and slid into the 12-foot anchorage basin, where she now lies with about 10 feet of water over her decks at high tide, and because of her location she constitutes a permanent obstruction to the navigable waters in that locality. Such slipping, it is conceded, was due to the negligence of the defendant. The authority under which the defendant assumed to remove the wreck from the position from which it was beached in order to conduct salvage operations was contained in a letter from the owner to the defendant, dated March 11, 1925, reading as follows:

"March 11/25.

"Bridgeport Tow Boat Co., Bridgeport, Conn.—Gentlemen: As per phone conversation of to-day, inclosed find bill for $15.00 for Marion lifeboat, as requested by you, for which you can mail me check at your convenience. In regard to your trying to wreck Marion, if you can get her, go to it, as long as you will give us the mast, booms, and hoisting engine, as per our phone conversation of to-day, as I intended getting them myself with the Nellie Follette, who should be to Bridgeport sometime this week.

"Yours respectfully,

"Stephen J. Horkay."

It is the contention of the government, upon this state of facts, that it is entitled to a mandatory injunction, directed to the defendant, restraining it from continuing the obstruction by it created, and directing it to remove said obstruction. Support for this contention is based upon Act March 3, 1899, c. 425, § 10 (Comp. St. § 9910), which provides, inter alia, as follows:

"The creation of any obstruction not affirmatively authorized by Congress to the navigable capacity of any of the waters of the United States is hereby prohibited."

The first part of section 12 of the same act (Comp. St. § 9917) pertains to the criminal prosecution of every person or corporation violating the above provision, and then it is provided as follows:

"And, further, the removal of any structures or parts of structures erected in violation of the provisions of the said sections may be enforced by the injunction of any [circuit] court exercising jurisdiction in any district in which such structures may exist, and proper proceedings to this end may be instituted under the direction of the Attorney General of the United States."

From this provision it seems clear that an injunction may only be issued to enforce the removal of any structures or parts of structures which have been erected in viola-

tion of the provisions of sections 9 and 10 of the act (Comp. St. §§ 9971, 9910). But the government contends that the acts of the defendant constituted the "creation" of an obstruction, and that the defendant, therefore, is amenable to the injunctive process of this court.

On the other hand, the defendant claims that under the common law the owner of a sunken vessel could allow the boat to remain where she sank, and was not bound to buoy her and was not liable for maintaining a nuisance, and that the Rivers and Harbors Act, above cited, constitutes, to a large extent, nothing but a reiteration of the common law, with the exception that there is a duty imposed on the owner to mark and buoy the wreck until the same is abandoned, and that it becomes the public duty of the United States to remove the wreck. The defendant further contends that it never became the owner of the vessel in question, and therefore is not amenable to the provisions of the statute relied upon by the government in this suit.

[2] A careful reading of the defendant's brief fails to disclose any reason why sections 10 and 12 of the Act of March 3, 1899, are not applicable to the facts disclosed in this stipulation. No reference of any kind is made in the defendant's brief to these sections of the law. Nevertheless I am of the opinion that the act is not applicable to a case of accident or negligence. In other words, when the statute speaks of the "creation of any obstruction," what is meant is evidently the consciously directed action to such an end. Not that it is necessary that the purpose be to create an obstruction, but that such a result is reasonably to be apprehended from the acts actually intended.

The case cited by the government which most closely approaches the facts of the case at bar is United States v. Hall, 63 F. 472, 11 C. C. A. 294, where the owners salvaged so much of the material aboard the vessel as they desired, and then, having stripped and abandoned her, scuttled the craft and permitted her to sink at a point where she constituted an obstruction to anchorage and navigation It seems to me, however, that the deliberate scuttling of a vessel at a point where she would constitute an obstruction to navigation comes precisely within the definition of the word "creation," as I have hitherto defined it. In other words, wholly irrespective of whether or not there was a design to create an obstruction to navigation, the result of the consciously directed sinking of the ship at the spot in question should reasonably have been

15 F.(2d)—16

apprehended, and therefore it is to be assumed that the creation of the obstruction was intended. The differentiating circumstance in the present case, however, lies in the fact that the *sinking* of the vessel was not deliberate, was not intended, but was due to an accident which, whether caused by negligence or not, remains nevertheless an accident.

I am therefore of the opinion, and so hold, that the stipulated facts do not bring the case within the scope of the provisions of the statute relied upon by the government. Judgment may therefore be rendered for the defendant, dismissing the bill of complaint, with costs; and it is so ordered.