**In the Matter of the Complaint of W. O. SASSER, Owner of the FISHING VESSEL, BARBARA SUE for Exoneration from or Limitation of Liability.**

**Civ. A. No. 2504.**

United States District Court,
S. D. Georgia,
Savannah Division.

June 22, 1970.

George H. Chamlee, Savannah, Ga., for plaintiff.

George N. Pahno, William T. Moore, Jr., Savannah, Ga., for claimant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LAWRENCE, Chief Judge.

On mid-afternoon, December 6, 1968, the "Barbara Sue," a shrimp boat, was trolling in Calibogue Sound. Her port and starboard nets were out. The claimant, William Murray, who was captain of the vessel, was handling the "trynet" which was being let out to drag.[1] This third and much smaller net is operated by a separate hoist. The "Barbara Sue" was moving at a speed of 7 or 8 miles per hour, according to Murray. The automatic pilot was in operation.

The other member of the crew, Ruben Perry, who was eating lunch in the galley, heard a cry for help. He went aft the cabin and found Murray lying on the deck near the "trynet" winch. His lower left leg appeared to be broken. Help was radioed for and an ambulance met the "Barbara Sue" at Cockspur Island around 6:00 p. m. Murray was taken to the Public Health Service Clinic where it was found that the tibula and fibula of his left leg were broken. The break was about 8 inches above the ankle. A radiologist, Dr. John Raburn, testified that the x-rays indicated that whatever blow produced the fractures was a lateral one, that is, the impact came from the side of the left leg.

The hospital record states as part of the history that "patient fell." How-

---

1. The "trynet" is used to find out whether shrimp are running before lowering the large nets or to sample the catch when they are in use.

ever, Dr. Allen P. Brown who made the entry explained that this information did not necessarily come from the patient. A subsequent entry as to history stated that Murray was "hit with wedge." Murray's helper, Perry, never asked claimaint how the injury occurred. The former assumed that he had been struck by the handle of the metal lever which is used to operate the hoist.[2] He testified that when he went to Murray the lever had come all the way back to the floor and that the injured man was lying close to the handle. The "trynet" was going out.

Claimant testified that when the boat reached Cockspur it was met by the owner's wife who asked him how the injury occurred. He replied, "The handle of the hoister hit me." The version of the accident that he gave on the stand was that his hand slipped off the handle and that the lever came back striking his leg and knocking him down.

Plaintiff brought this action for exoneration and limitation of liability under 46 U.S.C. § 183 and Murray filed claim for damages.

The "Barbara Sue" was one of seven shrimp boats operated by W. O. Sasser from his place of business on the Wilmington River near Savannah. She is 53 feet in length and was built in 1958. The vessel was purchased by the present owner several years later. In 1967 the "CMC" hoists were completely overhauled by Sasser's mechanic, Frank Shinall. No repairs have been made or required since then, according to the witnesses.

The owner maintains that the injury could not have occurred in the manner claimed. Shinall asserted that it was "impossible" for the lever to "kick back." Another witness, J. R. Cannas, a boat repairer, testified that there was no "way to make the lever fly back" and that it was "almost impossible." Other witnesses who had been members of the crew of the "Barbara Sue" in the past said that they had never experienced trouble with the hoist and claimant's own witness, Ruben Perry, admitted as much. A marine surveyor, Charles Sullivan, testified that experiments were made by jamming the "trynet" hard against the rigger. The lever did not come down with any degree of force when this was done.

According to Murray, on one occasion prior to the injury, he reported to Sasser that the handle of the "trynet" was giving trouble. Perry said that he heard the conversation in question. This is vigorously denied by the owner. Murray testified that on another occasion he tried to get Shinall to fix the lever and that the latter complained to him of the amount of work he had and "never got to it." This was strongly denied by Mr. Shinall who testified that there was never any complaint to him about the hoist. He says that the first thing he always does when a shrimp boat docks is to ask the master "if anything needs fixing." Shinall admitted that some time after the injury—one month to six months, according to estimates— he welded a plate to the "trynet" hoist so that the lever would not come down toward the flooring when the winch was not in operation. He explained that the plate was solely for the convenience of the winch operator so that he would not have to reach down toward the deck to grasp the lever handle.

At or near the place where the lever formerly rested on the deck the flooring is slightly grooved. It is contended by claimant that this indicates that at some point in its history the handle was accustomed to striking the deck with force. The owner of the "Barbara Sue" stated that the grooving is so located that it could not have been made by the existing lever. Mr. Sasser expressed the opinion that the indentation could have been caused by vibration of the boat when the lever handle rested on the deck.

---

2. When the power take-off is on and the lever on the "trynet" winch is manually pushed forward, the clutch engages and the drum revolves and winds the cable.

A mechanical engineer who testified on claimant's behalf said that he had examined the various photographs introduced in evidence and studied the brochure published by the manufacturer of the winch. This witness, Arthur J. Gautreau, was of the opinion that it was possible, under some circumstances, for the lever to kick back with great force. He said that the rusty and corroded condition of the hoist could bring about such a result. Inspection of the equipment showed it to be quite weatherbeaten.

It was admitted by the owner of the "Barbara Sue" that the brakes on the winch are inoperative. They became frozen by reason of non-use and the winches are braked by other means. According to the evidence, the absence of brakes did not contribute to the alleged faulty action of the lever on the day of the accident.

If we take the above summary of the case at face, the evidence appears to preponderate against Murray. But how am I to reach any conclusion other than that the injury occurred as a result of the lever handle forcibly striking this employee's leg? No other explanation has been offered. Can it be denied that at the time of the accident he was operating the "trynet" hoist? The seas were not high. There is no evidence of rolling nor of any other cause of the injury. To me, the fractures indicate that Murray's leg was laterally struck a blow by some external force. Mr. Gartreau testified that over a thousand foot pounds force could have been involved. The site of the injury is where the lever handle would have struck had it done so. I realize it is strongly contended that if Murray were standing in the precise position he said he was at the time of the accident his knee and not the outside of his leg would have been hit. I do not think his recollection in that respect is determinative.

■■ The doctrine of *res ipsa loquitur* is applicable in admiralty cases, including limitation of liability, where the instrumentality is in exclusive control of the defendant. Gibbs v. Kiesel, 5 Cir., 382 F.2d 917, 919; Austerberry v. United States, 6 Cir., 169 F.2d 583, 591; Blumenthal v. United States, D.C., 189 F.Supp. 439, 445ff; "Injury on Ship— Res Ipsa Loquitur," 1 A.L.R.3d 642. Such an approach is fully warranted here. If the lever flew back hard and the handle thereof caused the injury, it is inferable from the fact of such occurrence that the "Barbara Sue" was unseaworthy at the time of the accident. As stated in Gibbs v. Kiesel, *supra*, 382 F.2d p. 919: " * * * it is of no real significance how or why the 'doors' fell. The fact that they fell during ordinary intended use indicates a defective condition; therefore rendering the CEE LOT unseaworthy as a matter of law." In Marshall v. Ove Skou Rederi A/S, 5 Cir., 378 F.2d 193, 201 the same Court held that "Prior and subsequent safe operation of gear was evidence whether the gear was reasonably fit for the use intended * * * but does not alone determine the gear seaworthy; * * * * "

■ Concluding that there is liability, what damages should be awarded? Murray was confined to the hospital about twelve days. The break was very slow in healing due to claimant's diabetic condition. A cast remained on his leg for a period of some six months. He was not released as able to return to work until a year after the accident. Murray testified that he has been hired to work aboard a shrimp boat during the approaching season. There is no proof of permanent disability or reduced capacity to labor. No special damages are sought.

The shipowner claims that Murray was himself negligent in that if the hoist and lever were defective, he had knowledge of the fact and should have positioned himself more safely in operating the "trynet" hoist. I cannot and do not find from the evidence that claimant was negligent in that respect.

Damages for pain and suffering and any other compensable factor are awarded in the sum of $5,000.00.

At the trial I made from the bench an award for maintenance in the amount of $2,500.00, a sum which roughly approximated $7.00 per day for 364 days. Cure was not involved.

█ The total verdict of $7,500.00 is so near the stipulated value of the "Barbara Sue" that I do not deem it necessary as a practical matter to pass upon the issues of privity, knowledge or negligence of the owner in respect to the alleged defect in the hoist. See 46 U.S.C. § 183. The burden of proof as to the limitation of liability phase is on petitioner and not upon claimant. Petition of Trawler Snoopy, Inc., D.C., 268 F. Supp. 951; China Union Lines, Limited v. A. O. Andersen & Co., 5 Cir., 364 F.2d 769 (5th Cir.). In any event, I forego any findings on the limitation issue, at least at this time.

This order contains sufficient findings of fact as well as conclusions of law and they will not be formalized. However, if additional ones are deemed desirable, they may be submitted. Counsel for claimant will present a form of judgment to the Court.