**UNITED STATES of America,**
**Plaintiff,**

v.

**CHESAPEAKE & DELAWARE SHIP-**
**YARD, INC., Defendant.**
**Civ. A. No. 20291.**

United States District Court,
D. Maryland.
Jan. 23, 1974.

George Beall, U. S. Atty., for the District of Maryland, Baltimore, Md., and Alfred H. O. Boudreau, Jr., Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., for plaintiff.

David L. Bowers, Harris & Bowers, Baltimore, Md., for defendant.

WATKINS, Senior District Judge.

This suit by the United States, plaintiff, against Chesapeake & Delaware Shipyard, Inc., defendant, is brought under the authority of 33 U.S.C. § 409 of the Rivers and Harbors Act of 1899 (hereinafter referred to as the "Wreck Act")[1] for costs incurred by the United States in raising and removing defendant's sunken barge from the navigable channels of the Chesapeake and Delaware Canal. During a non-jury trial, the government alleged that, under the theory of *res ipsa loquitur*, an inference of negligence on the defendant's part is warranted from the facts, and that, consequently, § 409 of the Wreck Act permits full recovery from the defendant. The defendant has quite properly conceded that the barge in question was sunk in the "navigable channels" of the C & D Canal and constituted a menace to navigation (Transcript 6, 17, 36), and that a finding of "negligence" by the Court would render it liable to the United States under § 409 for costs incurred in removing the barge. (Transcript 48). By admitting the applicability of § 409 (if negligent), the defendant apparently concedes that its sunken barge constitutes a "vessel" within the meaning of that section. The defendant does, however, contend that the doctrine of *res ipsa loquitur* either is inapplicable on the facts or, if applicable, that the plaintiff has failed to prove the requisite elements in order for the doctrine to be invoked.

Briefly, the facts of the case are as follows. Defendant's shipyard is situated on the northern side of the Chesapeake and Delaware Canal, approximately one-half mile west of the Chesapeake City Bridge. Between the evening of September 23, 1967, and the morning of September 24, 1967, defendant's intentionally sunken wooden barge, measuring ninety feet long, thirty feet wide and nine feet from keel to gunwhale, disappeared from its moorings at defendant's shipyard and came to rest under the waters of the Chesapeake and Delaware Canal. (Transcript 6).

One of the defendant's employees noticed that the barge was missing (around 8:00 a. m. of Sunday, September 24th), and reported this fact to defendant's manager, who in turn informed defendant's president. (Transcript 8, 45). Defendant conducted a fruitless search and then reported the barge's disappearance to the United States Army Corps of Engineers. After locating the sunken barge in the channel of the C & D Canal, approximately one hundred twenty-five to one hundred fifty feet from its original resting point on the bottom (Transcript 3, 2?), the Corps requested that defendant raise and remove the barge. Defendant's president declined, stating that it was abandoning the barge. (Transcript 6). The Corps of Engineers subsequently removed the barge from the navigable channel at a cost of $13,555.37. The reasonableness

---

1. The pertinent part of § 409 of the Wreck Act reads:

It shall not be lawful to . . . voluntarily or carelessly sink, or permit or cause to be sunk, vessels or other craft in navigable channels. . . . And whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful; and it shall be the duty of the owner of such sunken craft to commence the immmediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States as provided for in sections 411 to 416, 418, and 502 of this title. Rivers and Harbors Act of 1899, 33 U.S.C. § 409.

of these expenses is not in question here.

While at one point defendant had employed the barge as a derrick and to transport pilings, sometime during 1966 the use of the barge was no longer required and the defendant sunk it at its mooring point. (Transcript 8). The barge had been scuttled because it was easier to hold fast with lines when it was aground than when floating—e. g., it was less susceptible to the wake and suction caused by passing vessels. (Transcript 37, 38). According to the testimony of both defendant's president and its manager, the barge could easily have been made seaworthy again by pumping and making some minor repairs such as caulking. (Transcript 35, 46).

While aground, and for several years prior to its sinking by the defendant, the barge was secured fast by four lines: one metal line of an inch or more in diameter, running from the barge to a tree on the land; and three nylon or manilla lines of one to two inches in diameter, one line running from the barge to a "deadman" and two lines to two "dolphins" or pilings. Although the lines were apparently susceptible to deterioration and weakening, both defendant's president and its manager testified that they did not personally check the lines; the president stated further that he did not direct anyone else to investigate for fraying, and did not know whether the lines had ever been replaced. (Transcript 13, 36, 37). This responsibility tacitly rested upon defendant's tugboat captains (Transcript 40, 41, 43, 44). There was no scheduled checking of the lines. (Transcript 44).

No direct evidence was offered as to how the barge, while resting on the bottom, managed to escape its moorings. The government introduced unrefuted evidence that weather conditions were normal and that there were no storms or unusual gusts of wind during the period in which the barge disappeared. (Transcript 18, 19). Although the defendant offered some proof that the wake and suction caused by large passing ships could have wrenched the barge loose from its lines and has in the past wrecked havoc on other moored vessels, there was no evidence that the barge had ever broken loose from its moorings before. (Transcript 30, 37). Nor was there any evidence, direct or in the form of damage to other vessels or property within the immediate vicinity, which would indicate that a large passing ship might have been responsible for the barge's breaking away. Curiously, both defendant's president and its manager testified that they could not remember checking the lines after the loss in order to endeavor to ascertain the cause of the vessel's disappearance.

Since the defendant has admitted that its barge, sunk in the navigable channel of the Chesapeake and Delaware Canal, constituted an obstruction to navigation, there are three issues before the Court: first, whether defendant's barge constitutes a "vessel, or other craft" within the meaning of § 409 of the Wreck Act (33 U.S.C. § 409); second, whether defendant "negligently" sunk his barge in navigable channels; and third, whether defendant is liable to the government under § 409 of the Wreck Act for the costs incurred by the United States in raising and removing the sunken barge. The defendant has properly conceded that, if the barge is a "vessel", and if he is guilty of negligence, he is clearly liable to the United States under § 409. (Transcript 48).

I.

There is little doubt that a barge constitutes a "vessel" within the meaning of 33 U.S.C. § 409. In re Eastern Transportation Co., 102 F.Supp. 913, 916 (D.C.Md.), aff'd sub nom. Ottenheimer v. Whitaker, 198 F.2d 289 (4 Cir. 1952). See, United States v. Moran Towing & Transportation Co., 374 F.2d 656, 663 (4 Cir. 1967) (vessels or other crafts "encompass, generally, all objects designed and intended to float on navigable waters which, when sunk, would

create an obstruction similar to that of a sunken vessel."); In re Midland Enterprises, Inc., 296 F.Supp. 1356, 1360 (S.D.Ohio 1968) (wherein a barge was held to be within the meaning of "vessel" as regards 46 U.S.C.A. § 183). *See also*, Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967); Zubik v. United States, 190 F.2d 278 (3 Cir. 1951); In re Marine Leasing Services, Inc., 328 F.Supp. 589 (E.D.La.1971). The mere fact that the barge had been sunk before its disappearance does not alter the conclusion. Humble Oil & Refining Co. v. The Tug Crochet, 422 F.2d 602 (5 Cir. 1970). Moreover, there was unqualified testimony by both defendant's president and its manager that the sunken barge was capable of being raised and used once again. That fact alone would satisfy the definition of a "vessel" in United States v. Moran Towing & Transportation Co., supra at 663 of 374 F.2d.[2]

## II.

■ The second issue is whether or not the defendant was negligent in allowing its vessel to sink and obstruct the navigable channels of the Chesapeake and Delaware Canal. On the facts set out above, this Court concludes that, as explained below, the doctrine of *res ipsa loquitur* is applicable. Fauntleroy v. Argonaut S. S. Line, Inc., 27 F.2d 50, 51 (4 Cir. 1928).

In order for the injured plaintiff to invoke *res ipsa loquitur*—which literally means "the thing speaks for itself," Sweeney v. Erving, 228 U.S. 233, 33 S. Ct. 416, 57 L.Ed. 815 (1913)—three elements must be shown: (1) that the injured party is without fault (i.e., has not been contributorily negligent), (2) that the object causing the injury is under the exclusive control of the defendant, and (3) that " . . . the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care." San Juan Co. v. Requena, 224 U.S. 89, 99, 32 S.Ct. 399, 401, 56 L.Ed. 680 (1912); Jesionowski v. Boston & Maine Railroad Co., 329 U.S. 452, 457, 67 S.Ct. 401, 91 L.Ed. 416 (1947); Johnson v. United States, 333 U.S. 46, 48–49, 68 S.Ct. 391, 92 L.Ed. 468 (1948).

Applying the facts of the present case to these criteria, it is clear that the standard for invoking the doctrine has been met. Johnson v. United States, *supra*; Fauntleroy v. Argonaut S. S. Line, Inc., *supra*; Atlantic & Gulf Stevedores, Inc. v. Skibs A/S Danmotor, 342 F.Supp. 837 (S.D.Tex.1971); California v. S. S. Bournemouth, 318 F. Supp. 839 (C.D.Cal.1970). There has been no allegation that the government contributed in any way whatsoever to the sinking of the barge or its breaking away from the securing lines. Nor is there any question but that the barge was exclusively within the dominion and control of the defendant. The defendant whose shipyard was surrounded by a fence owned the barge and was solely responsible for its maintenance, use and safety. Finally, as Mr. Justice Douglas said in the *Johnson* case, "[a] man who is careful does not ordinarily drop a block on a man working below him." 333 U.S. at 48, 68 S.Ct. at 393. By analogy, in the "ordinary course of things," a barge which is properly secured and moored will not break away from its lines and move one hundred twenty-five to one hundred fifty feet from its initial resting point.

The legal effect of meeting the three criteria of *res ipsa loquitur* is that the fact finder is warranted in inferring

2. The Fourth Circuit, as it notes in United States v. Moran Towing & Transportation Co., 374 F.2d 656, 662 (4 Cir. 1967), has held various crafts to be vessels: Summerlin v. Massman Const. Co., 199 F.2d 715 (4 Cir. 1952) (a floating derrick engaged in pouring concrete for a bridge); Jeffrey v. Henderson Bros., 193 F.2d 589 (4 Cir. 1951) (a barge moored behind piles on a river bank and serving as a platform for coal cleaning machinery); George Leary Const. Co. v. Matson, 272 F. 461 (4 Cir. 1921) (a floating pile driver).

that the defendant was negligent. In the oft-quoted language of the Supreme Court:

> . . . *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient . . . . [Sweeney v. Erving, 228 U.S. 233, 240, 33 S.Ct. 416, 418, 57 L.Ed. 815 (1913)].

Jesionowski v. Boston & Maine Railroad Co., 329 U.S. 452, 457, 67 S.Ct. 401, 404, 91 L.Ed. 416 (1947); Johnson v. United States, *supra* at 48 of 333 U.S., 68 S.Ct. 391. If the trier of the facts draws an inference of negligence, *procedural* implications arise. Johnson v. United States, *supra* at 49–50, 68 S.Ct. 391; Blumenthal v. United States, 189 F. Supp. 439, 445 (D.C.Pa.1960). Although the burden of proof by a preponderance of the evidence still rests upon the plaintiff, once an inference of negligence is drawn after a weighing of the facts, the plaintiff has established a *prima facie* case of negligence. Sweeney v. Erving, *supra* at 239 of 228 U.S., 33 S.Ct. 416; Smith v. Pennsylvania Central Airlines Corp., 76 F.Supp. 940, 943 (D.D.C.1948). Consequently, the burden of going forward with the evidence shifts to the defendant, and it is for him to produce for rebuttal evidence or run the risk of non-persuasion[3]:

> . . . they [the facts] call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. [Sweeney v. Erving, *supra* at 240, of 228 U.S., at 418 of 33 S.Ct.].

After weighing the facts of the present case, this Court finds that the plaintiff has proved by a preponderance of the evidence that the defendant was negligent. During a period of six years, while the barge in question was still afloat, it had not torn away from its lines, despite the suction and wake caused by large passing vessels and despite storms and other adverse weather conditions. In 1966 when the defendant sank the barge at its moorings, it did so because the barge was more secure when resting on the bottom as opposed to floating. In the absence of bad weather or severe stress caused by the wake or suction of a passing vessel, it is logical to conclude that, but for the lack of due care, if the barge had not broken loose while floating, it would be less likely to have done so when sunk and resting aground. The failure of the defendant to check the lines securing the barge on a regular, scheduled basis and to check or preserve the remnant lines after the casualty would seem to be inconsistent with the exercise of due care in the maintenance of the vessel and in the allegation that its loss was not due to negligence.

■ Finally, under the doctrine of *res ipsa loquitur*, the defendant is not required satisfactorily to account for the disappearance of the barge, but merely to rebut the inference that it failed to use due care. The defendant has not done this. No feasible explanation was supported by any cogent evidence. Here, as in many other *res ipsa loquitur* cases, the defendant has failed to rebut the inference of negligence arising from an unexplained event. *See generally,* Johnson v. United States, 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468 (1948) (wherein a block fell upon a seaman working below); Atlantic & Gulf Stevedores, Inc. v. Skibs A/S Danmotor, 342 F.Supp. 837 (S.D.Tex.1971) (wherein a steel half-collar and pin from a loading boom fell on a workman below); California v. S. S. Bournemouth, 318 F.

---

3. The Court of Appeals of Maryland conceptually adheres to the doctrine of *res ipsa loquitur* as set forth in this opinion. Baltimore American Underwriters of Baltimore American Insurance Co. v. Beckley, 173 Md. 202, 207–208, 195 A. 550 (1937); Potomac Edison Co. v. Johnson, 160 Md. 33, 36–37, 152 A. 633 (1930).

Supp. 839 (C.D.Cal.1970) (wherein an oil spill was attributed to defendant's boat on the basis of habor currents, weather, wind and non-existence of other boats in the area); In re Sasser, 314 F.Supp. 847 (S.D.Ga.1970) (wherein the captain of a shrimp boat was unexplainably struck by the lever of a winch used on the boat); Blumenthal v. United States, 189 F.Supp. 439 (E.D.Pa.1960) (wherein the left engine of a plane fell off, thereby leading to the death of a passenger upon bailing-out); Smith v. Pennsylvania Central Airlines, Corp., 76 F.Supp. 940 (D.D.C.1948) (wherein the defendant's plane mysteriously crashed into a mountain, killing passengers).

### III.

■ The defendant has quite properly conceded liability under 33 U.S.C. § 409 if found to be negligent. It is now well-established that where a vessel

sinks in a navigable waterway due to the negligence[4] of its owner, so that it creates an obstruction to navigation, the owner may not shift the burden and expense of removing the obstruction to the United States by abandoning the vessel. Rather, under § 409 of the Wreck Act, the owner is required either to remove the sunken vessel, or to reimburse the government for the cost of removal.[5] Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967); Humble Oil & Refining Co. v. The Tug Crochet, 422 F.2d 602 (5 Cir. 1970); In re Pacific Far East Line, Inc., 314 F.Supp. 1339 (N.D. Cal.1970). See, In re Marine Leasing Services, Inc., 328 F.Supp. 589 (E.D.La. 1971).

Let judgment be entered in favor of the United States against the defendant in the sum of $13,555.37.

---

4. The Supreme Court has equated the word "carelessly" which is the terminology used in § 409, with the word "negligently." Wyandotte Transportation Co. v. United States, 389 U.S. 191, 197 n. 6, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967).

5. The government alleges in its complaint that the defendant is also liable to the United States under § 403 of the Wreck Act, which reads in part: The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited. . . . Rivers and Harbors Act of 1899, 33 U.S.C. § 403. Since this Court has determined that the defendant is liable to the United States under 33 U.S.C. § 409 for the full cost of removing the sunken barge, it is unnecessary at this time to determine whether § 403 is applicable in the present case. It is noted that in Wyandotte Transportation Co. v. United States, 389 U.S. 191, 196 n. 5, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), the Supreme Court specifically reserved comment on whether or not a sunken vessel can constitute an "obstruction" within the meaning of § 403 of the Wreck Act. On the other hand, some courts have held that a vessel

can be an obstruction. United States v. Cargill, Inc., 367 F.2d 971 (5 Cir. 1966); United State v. Bethlehem Steel Corp. (Texmar), 319 F.2d 512, 522 n. 1 (9 Cir. 1963) (dissenting opinion). See generally, United States v. Zubik, 295 F.2d 53 (3 Cir. 1961); United States v. Wilson, 235 F.2d 251 (2 Cir. 1956); United States v. Bridgeport Towing Line, Inc., 15 F.2d 240 (D.C.Conn.1926); United States v. Hall, 63 F. 472 (1 Cir. 1894). However, this district and the Fourth Circuit have previously expressed an opposite view. In re Eastern Transportation Co., 102 F.Supp. 913, 916 (D.C.Md. 1952), aff'd sub nom. Ottenheimer v. Whitaker, 198 F. 2d 289 (4 Cir. 1952); United States v. Bethlehem Steel Co., 235 F.Supp. 569 (D.C.Md. 1964), rev'd on other grounds; United States v. Moran Towing & Transportation Co., 374 F.2d 656 (4 Cir. 1967), remanded 389 U.S. 575, 88 S.Ct. 689, 19 L.Ed.2d 775 (1967), on remand 409 F.2d 961 (4 Cir.), on remand United States v. Bethlehem Steel Co., 302 F. Supp. 600 (D.C.Md.1969). Accord, United States v. Bethlehem Steel Corp. (Texmar), 319 F.2d 512 (9 Cir. 1963). See also, Loud v. United States, 286 F. 56 (6 Cir. 1923); The Manhattan, 10 F.Supp. 45 (E.D.Pa.), aff'd 85 F.2d 427 (3 Cir. 1935).