**BOSTON & MAINE R. R. v. JESIONOWSKI.**

No. 4108.

Circuit Court of Appeals, First Circuit.

April 1, 1946.

Writ of Certiorari Granted May 20, 1946.

See 66 S.Ct. 1121.

Before MAHONEY and WOODBURY, Circuit Judges, and ALBERT LEE STEPHENS, Circuit Judge (by special assignment), sitting.

Francis P. Garland and Hurlburt, Jones, Hall & Bickford, all of Boston, Mass., for appellant.

Thomas C. O'Brien, of Boston, Mass., for appellee.

STEPHENS, Circuit Judge.

Stanley Jesionowski, a brakeman on the Boston & Maine Railroad, was killed in a train wreck, while on duty. His widow, administratrix of decedent's estate, recovered a substantial judgment upon the second count of a complaint laid in two counts against the railroad corporation for compensation to herself and the minor children in an action pursuant to the provisions of Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. The railroad appeals.

Early in the morning of July 1, 1944, a freight train under appellant's operation was moving westerly and came to a stop a short distance beyond a switch point. The fourth car back from the engine was to be dropped onto the north siding. According to the testimony of the engineer, the only eye witness to the wreck, the following occurred: Jesionowski, the deceased, who was riding in the engine cab, dropped to the ground and "he went back to cut off four cars." In due time he gave the engineer the go-ahead signal by lantern, and the engineer moved the train forward until he received the stop signal from Jesionowski. The latter went to the switch stand and started back toward the car, giving the signal to back. The engineer then saw Jesionowski on the side of one of the cars, and he repeated the back-up signal though the train had already started backward. He proceeded to back at a speed of five miles per hour to enter the siding. He had backed about three car lengths when he saw splinters and planks flying about and stopped the train. Investigation revealed that although the switch mechanism had been thrown so as to bring the switch rail points against the main track rails in the proper position to direct an east bound movement of cars onto the siding, the front truck wheels of the leading car in the backward movement had not taken the switch, but continued past the switch rail points without leaving the main rails. The other truck wheels of this car and the front

704

truck wheels of the next car had jumped the track. Part of the train had backed over the frog (75½ feet westerly from the switch points), cutting and notching its bolts. Marks, evidently from wheel flanges, were on the rails and ties, both forward and backward from the frog. Jesionowski's dead body was lying on the track.

There is evidence to the effect that the road bed rails, switch and switch mechanism, and the frog were found in good condition, and the same is true as to the several parts of the cars involved, except only the damaged parts due to the wreck. No counter evidence is in the case. Measurements as to the length of the cars, coupling mechanism and engine, together with the footage from the switch to the point the engine began backing, was introduced.

There are two counts to the complaint. In the first one it is alleged that Jesionowski's death was caused by reason of a defect or insufficiency, due to the negligence of the railroad corporation in its car, track or roadbed. The car upon which Jesionowski was riding was derailed, causing him to be thrown under the car wheels and killed. It is alleged in the second count that Jesionowski's death resulted from the derailment of the car upon which he was riding and that the derailment was the result of the railroad corporation's negligence. No specification of any particular negligence was alleged. The second count was added as an amendment after filing of the original complaint.

By the answer the plaintiff was put upon her proof as to the defendant's alleged negligence. Contributory negligence upon the part of Jesionowski was alleged.

■ The court instructed the jury to return a verdict in favor of the defendant railroad on the first count, gave full instructions as to the law and left the decision upon the second count to the jury. The verdict returned was for the defendant upon the first count and for the plaintiff upon the second count. The defendant here, in the character of appellant, contends that the verdict in the first count is res judicata as to the second count and that therefore the judgment upon it must be set aside. The contention made its first appearance in appellant's opening brief on appeal. Rule 75(d) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, is: "If the appellant does not designate for inclusion the complete record and all the proceedings and evidence in the action, he shall serve with his designation a concise statement of the points on which he intends to rely on the appeal." The record is not here in full and the designation of points relied on was made but no mention of res judicata was in them. Appellee insists that we ignore the contention on authority of the rule, and argues that had it been in the points, the record could have been completed so as to have explained the situation in such a manner as to require us to hold against it. In addition, appellee suggests that there is nothing to it anyway. We refuse to consider the point made but as as to its merits see Romana v. Boston Elevated R., 226 Mass. 532-536, 116 N.E. 218.

The court instructed the jury fully as to the doctrine of res ipsa loquitur, and this is claimed by appellant as reversible error.

■ It is the theory of appellant that since the operation of the switch, which was to direct the four cars from the main line onto the siding, was in the control of Jesionowski, and that since the instrumentality, which was involved in the damaging accident, was not under exclusive control of appellant, the doctrine of res ipsa loquitur does not apply. Upon this question the trial court was most painstaking to explain that the jury should first consider whether or not the decedent was guilty of negligence, and that should they find him guiltless or at least guiltless as to any negligence contributing to the accident, the jury should then apply the doctrine of res ipsa loquitur. This was error. The possible causal actions leading up to the fatal accident cannot be so separated.

The court in its charge quoted from San Juan Light Co. v. Requena, 1911, 224 U.S. 89, 98, 99, 32 S.Ct. 399, 401, 56 L.Ed. 680: "* * * When a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care."

The "thing" which caused the injury in our case was within the confines of a compound of several elements, including the stopping of the train to begin the switching, the giving of the signals, the throwing of the switch, the backing of the train, the

condition of the track and track bed, the switch mechanism, the car wheel flanges and other rolling stock equipment. In this compound of elements the railroad corporation was not in exclusive control. Jesionowski was in control of important elements. In a very practical sense he, and not the corporation, was in control of very important elements, for he alone was in a position to observe; and it was his duty to observe and require the train to pull forward far enough for all of the wheels of the fourth car to clear the switch points before signaling the engineer to stop the forward movement, and the same duty continued after throwing the switch and before giving the signal to back.

The thing that caused the injury could have been Jesionowski's fault, or it could have been the railroad corporation's fault. It was the jury's duty to determine the cause of the accident, and since it must make that determination out of a set of facts wherein either one or both of the actors may have been at fault, it must do so without the aid of the doctrine of res ispa loquitur.

■ Prosser on Torts, page 295, says that there are in general three conditions necessary for the application of this doctrine: "(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." Thus an essential element of the principle of res ipsa loquitur is that the defendant have exclusive control of the thing causing the injury. Such essential element is not clear in this case. San Juan Light Co. v. Requena, supra; Liggett & Myers Tobacco Co. v. De Lape, 9 Cir., 1940, 109 F.2d 598, 601; United States v. Porter Brothers & Biffle, 5 Cir., 1938, 95 F.2d 694, 698; Gray v. Baltimore & O. R. Co., 7 Cir., 1928, 24 F.2d 671, 673, 59 A.L.R. 461; Lynch v. New York, N. H. & H. R. R., 1936, 294 Mass. 152, 200 N.E. 877; Massa v. Nippon Yusen Kaisha, 1934, 264 N.Y. 283, 190 N.E. 641; Texas & P. Coal Co. v. Kowsikowsiki, 1910, 103 Tex. 173, 125 S.W. 3.

The judgment of the District Court is reversed and the case is remanded to that court with directions to enter judgment for the defendant; the appellant recovers costs in both courts.