## JESIONOWSKI, ADMINISTRATRIX, *v.* BOSTON & MAINE RAILROAD.

No. 88.   Argued December 16, 1946.—Decided January 13, 1947.

*Thomas C. O'Brien* argued the cause for petitioner. With him on the brief were *J. Edward Keefe, Jr.* and *John S. Stone.*

*Francis P. Garland* argued the cause and filed a brief for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

Petitioner brought this action for damages in the Federal District Court under the Federal Employers' Liability Act, 35 Stat. 65, 53 Stat. 1404, 45 U. S. C. § 51 *et seq.*, for causing the death of her intestate. Count I alleged that "By reason of a defect or insufficiency, due to the negligence of the defendant, in its car, track, or roadbed, the car upon which the plaintiff's decedent was riding was derailed . . .," causing the decedent to be thrown from the car and killed. Count II, without specifying any particular acts of negligence, charged generally that the derailment and decedent's death were the "result of the negligence of the defendant." After the evidence was in, the Court, at the request of the respondent, directed the jury to return a verdict for the respondent on the first count. Respondent's motion for directed verdict on the second count, on the ground that the evidence failed to justify a

finding of negligence and that it showed that deceased was killed as the sole result of his own negligence, was overruled. The jury rendered a verdict for petitioner and judgment was entered on it. The Circuit Court of Appeals reversed and remanded to the District Court with directions to render judgment for the respondent. 154 F. 2d 703.

The trial court charged the jury that the burden was upon petitioner to prove by a fair preponderance of the evidence that the deceased's death was caused by respondent's negligence. It invoked the trial rule under which negligence may be inferred from unusual happenings growing out of conditions under a defendant's control. Referring to this rule under the name of *res ipsa loquitur,* the court charged: "Of course if the deceased's negligence was the sole cause of the accident the plaintiff here cannot recover. And since there can be no application of the doctrine of *res ipsa loquitur* if other causes than the negligence of the defendant, its agents or servants, might have produced the accident, the plaintiff is bound, she has the burden, to exclude the operation of such causes by a fair preponderance of the evidence before the rule can be applied. This is so because if there are other causes than the negligence of the defendant that might have caused the accident, the defendant cannot be said to be in exclusive control—one of the prerequisites to the application of the rule here invoked." The Circuit Court of Appeals reversed because it thought that the jury should not be permitted to draw an inference of defendant's negligence from an extraordinary accident growing out of a general set of circumstances which included activities of the injured person, even though a jury, under proper instructions, could find from the evidence that the injured person's activities did not cause the injury. The Circuit Court's limitation of the jury's province by this interpretation of a doctrine of *res ipsa loquitur* raised a question of impor-

tance in the trial of cases arising under federal law. We granted certiorari to consider this question. 328 U. S. 830.

The testimony, so far as relevant to point the issues, may be briefly summarized. Four railroad cars were being pushed backward and eastward by an engine in order to put them on a siding north of the main track. It was the duty of deceased, a brakeman, to throw the switch before the first car reached it in order that the four cars would take the siding. There was evidence that he threw the switch and gave a signal to the engineer to back the cars. Respondent's evidence was sufficient to authorize, but not to compel, the jury to find that the deceased negligently threw the switch while the lead car in the backward movement straddled the switch with one set of the car wheels on one side of the switch and one on the other. If true, this could mean that the wheels east of the switch would move down the main line and the others would enter the siding when the switch was thrown and the backward movement took place, thus probably causing derailment. If the jury had believed respondent's evidence that this last car was astride the switch when it was thrown, it would have been authorized, under the court's charge, to find for the respondent. But about 75 feet east of this switch, at a point where the south rail of the siding track intersected the north rail of the main track, there was a frog. There was testimony that this frog operated with a spring mechanism, and that if the spring failed to work when the wheels passed over it, the cars might be derailed. Some other evidence tended to show that, at the time the derailment occurred, splinters and planks were thrown into the air near the frog. Other evidence tended to show that planks and splinters were found on the track. Some testimony showed that they were close to the switch, and some that they were close to the frog. There was evidence that the frog and switch had been in good condi-

tion before the derailment and after the derailment. The cars had been operated and the tracks had been used previously, so far as the evidence showed, without any similar mishap.

In *San Juan Light Co.* v. *Requena,* 224 U. S. 89, 98–99, this Court said: "when a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as in the ordinary course of things does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care." Both prior to and after that case was decided, this Court has acted upon this rule in varying types of cases. *Transportation Co.* v. *Downer,* 11 Wall. 129; *Inland & Seaboard Coasting Co.* v. *Tolson,* 139 U. S. 551, 555; *Gleeson* v. *Virginia M. R. R.,* 140 U. S. 435; *Sweeney* v. *Erving,* 228 U. S. 233, 240. See also *Southern Ry.* v. *Bennett,* 233 U. S. 80; *Foltis, Inc.* v. *City of New York,* 287 N. Y. 108, 38 N. E. 2d 455, and cases collected, 153 A. L. R. 1134. The Circuit Court of Appeals thought, however, that the rule was improperly applied in this case because the railroad instrumentalities here were not under the "exclusive control" of the railroad; that "The thing that caused the injury could have been Jesionowski's fault, or it could have been the railroad corporation's fault." 154 F. 2d 703, 705.

The Court's reasoning was this: Petitioner was not entitled to have her case submitted to the jury except under the rule of *res ipsa loquitur.* That rule has rigidly defined prerequisities, one of which is that, to apply it, the defendant must have exclusive control of all the things used in an operation which might probably have caused injury. Here the railroad did not have exclusive control of all probable causative factors, since deceased had some immediate control over switching and signaling. "Exclu-

sive control" of all probable causative factors, the court reasoned, means that *res ipsa loquitur* cannot be applied even though those non-exclusively controlled factors are clearly shown to have had no causal connection with the accident.

We cannot agree. *Res ipsa loquitur,* thus applied, would bar juries from drawing an inference of negligence on account of unusual accidents in all operations where the injured person had himself participated in the operations, even though it was proved that his operations of the things under his control did not cause the accident. This viewpoint unduly restricts the power of juries to decide questions of fact, and in this case the jury's right to draw inferences from evidence and the sufficiency of that evidence to support a verdict are federal questions. A conceptualistic interpretation of *res ipsa loquitur* has never been used by this Court to reduce the jury's power to draw inferences from facts. Such an interpretation unduly narrows the doctrine as this Court has applied it.

This Court said, in *Sweeney* v. *Erving,* 228 U. S. 233, 240, a decision which cut through the mass of verbiage built up around the doctrine of *res ipsa loquitur,* that *"res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict." Thus, the question here really is not whether the application of the rule relied on fits squarely into some judicial definition, rigidly construed, but whether the circumstances were such as to justify a finding that this derailment was a result of the defendant's negligence. We hold that they were.

Derailments are extraordinary, not usual, happenings. When they do occur, a jury may fairly find that they occurred as a result of negligence. It is true that the jury might have found here that this accident happened as a result of the negligence of the deceased; but although the respondent offered evidence to establish this fact, it "did not satisfy the jury." *Southern Ry.* v. *Bennett, supra* at 86. With the deceased freed from any negligent conduct in connection with the switch or the signaling, we have left an accident, ordinarily the result of negligence, which may be attributed only to the lack of care of the railroad, the only other agency involved. Once a jury, having been appropriately instructed, finds that the employee's activities did not cause the derailment, the defendant remains as the exclusive controller of all the factors which may have caused the accident. It would run counter to common everyday experience to say that, after a finding by the jury that the throwing of the switch and the signaling did not contribute to the derailment, the jury was without authority to infer that either the negligent operation of the train or the negligent maintenance of the instrumentalities other than the switch was the cause of the derailment. It was uncontroverted that the railroad had exclusive control of both. We think that the facts support the jury's findings both that the deceased's conduct did not cause the accident and that the railroad's negligence did.

Respondent also urges here, as it did in the Circuit Court of Appeals, that because the trial judge directed a verdict for it on the first count of the complaint, which charged a defect in the car, track or roadbed, the court was not justified in submitting to the jury the question of a defect in these respects under the second count. The Circuit Court held that this question was not properly raised before it because respondent had failed on appeal to make "a

concise statement" of the point as required by Rule 75 (d) of the Rules of Civil Procedure. Respondent argues that the question was properly raised, though not specifically, by its general point that "the doctrine of *res ipsa loquitur* is not applicable to the facts of this case." We cannot hold that the Circuit Court erred when it refused to consider the question because of respondent's failure to comply with Rule 75 (d).

*Reversed.*

Mr. Justice Reed, Mr. Justice Jackson and Mr. Justice Burton would affirm on the grounds stated in the opinion of the Circuit Court of Appeals for the First Circuit.