**WILLIAMSON**

v.

**JONES & LAUGHLIN STEEL CORP.**

No. 11916.

United States Court of Appeals,
Sixth Circuit.

May 31, 1954.

Mortimer Riemer, Cleveland, Ohio, Smoot & Riemer, Cleveland, Ohio, on the brief, for appellant.

James Butler, Cleveland, Ohio, Bulkley, Butler & Rini, Cleveland, Ohio, on the brief, for appellee.

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

Appellant, Rex Williamson, brought this action in the District Court on account of injuries received while working in the mill of appellee, Jones & Laughlin Steel Corporation, in Cleveland, Ohio. At the close of appellee's case, the District Judge sustained appellee's motion for a directed verdict, and ordered the complaint dismissed.

On March 29, 1949, appellant was working as an electrician for Dingle-Clark Company, which was making, under contract with the appellee, certain electrical repairs and installations in appellee's mill. He was engaged with his helper, Clinton Edwards, in installing one inch conduit pipe on the ceiling of the basement of the motor room in appellee's blooming mill. He was working in a section of the basement about 10 feet wide and 40 feet long which contained electrical equipment essential to the operation of the mill. He was running the conduit immediately above a battery of power transformers, oil switches, and two potential transformers which were affixed to a steel pipe rack about five feet above the floor and 48 inches apart. The two potential transformers were connected by electrical cables and wires to the oil switches and the power transformers and had open fuse clips which were dangerous to touch. The potential transformers carried 6,600 volts.

Appellant was preparing to hold a strap to be welded to an overhead cast iron I-beam, which extended about 8 inches below the ceiling, to support the conduit pipe. He climbed on a wooden scaffold which was about four feet off the ground, and placed himself at a point midway between the potential transformers with his back against an abutment in the wall of the building. Because the ceiling was only 10 feet above the floor he was unable to stand erect. He squatted on his left foot, which he placed on the pipe rack and placed his right foot on eight temporary insulated cables which were strung across the horizontal members of the pipe rack. He grasped the conduit pipe in his left hand and lifted it toward the overhead I-beam. He held the strap in his right hand which was to be welded to the I-beam by Jarvis Street, another employee of Dingle-Clark Company. The appellant's testimony at this point was— "I took the strap, I had the strap in my hand, I put my thumb against the conduit that was coming across the beam, put the bracket up over the top of the beam and pushed the pipe up and that's the last thing I knew." He also testified as follows:

"Q. All right. Now, you reached up, you testified, and you received the shock, then what happened? A. The next thing I knew I was hanging head down, and my hands would almost touch the floor.

"Q. Where were your feet? A. This fellow had me by the ankles.

"Q. And was he up on the ladder? A. He was on his ladder.

"Q. And he was holding your ankles, your head was down and your hands were dangling almost to the floor? A. Almost, a couple of inches."

He also testified that before the accident no part of his body was in contact with the potential transformers, and that there was no way in which his foot or leg or other part of his body could have touched either potential transformer. Three fingers of his left hand were burned.

Clinton Edwards testified that the appellant's right foot was more or less just as a support on the cable, and that there was no sag or give to the cable. Also, that in getting himself into posi-

tion it was not necessary for the appellant to come up closer to the fuse clip because he could raise upright from his position directly under the I-beam.

Jarvis Street testified that his job was to go up and weld the pipe clip to the I-beam while the appellant held it in place; that he was about to start up the ladder when he saw a blue flash of light from electricity; that he looked up under the ceiling of the room and saw the appellant slumped over to the side with his hand up and realized that he was in trouble. This testimony then followed:

"Q. Let me interrupt for a minute. Where was this flash or blue arc you saw? A. From the ceiling.

"Q. Now, say that this is the wall behind me, with my back against the wall. When you looked up after seeing the flash how was Williamson? A. Slumped way over to the left.

"Q. Slumped over to the left? A. With his one hand up in the air.

"Q. One hand was still up in the air? A. Up on the ceiling, way up.

"Q. Up on the ceiling? A. Yes, he was hanging on.

"Q. Which hand was up on the ceiling, the right hand? A. Left.

"Q. The left hand was still up on the ceiling? A. Yes.

"Q. Against the I-beam, I guess, you mean. A. He had a one-inch pipe, he was holding the strap up, so that was probably it. I don't know what he exactly had hold of.

"Q. But he was still with his hand up and his body hung over like that? A. Yes, sir.

"Q. What did you do then? A. I'm thinking. I yelled for help and started up the ladder, and while I was going up the ladder there was another flash and he fell down against the potentials on the transformer.

"Q. Those are the potential transformers, you mean, that he fell across? A. Potential, yes, the potential transformer; yes, sir.

"Q. Did he fall across the one to his left or the one to his right? A. To his left."

The complaint alleged that contrary to its duty to provide a safe place in which the appellant could work, the appellee failed to do so and allowed its equipment to become worn out and defective, negligently failing to provide safeguards to handle and control the high voltage electric current flowing through its equipment, and that the appellant received severe injuries from an electrical shock caused by the electrical faults in appellee's worn out and defective equipment.

The District Judge was of the opinion (1) there was no evidence of negligence on the part of the appellee which directly or proximately caused the accident and injuries to the appellant, and (2) the case was not one in which the doctrine of res ipsa loquitur was applicable. He expressed the view that there was a safe way and an unsafe way in which the appellant could have done the work he was attempting to do; that, in his opinion, it was a most hazardous effort for the appellant "to have placed himself between two potential transformers which he knew were carrying 6,600 volts of electricity and undertake to crouch on a steel rack with his left foot and with his right foot on a movable cable and thus balance himself while he reached his left hand up to make a weld with a conduit against the girder above his head." He thought it was more probable that the accident happened because of the gross negligence on the part of the appellant than because of negligence on the part of the appellee. However, he made it clear that he was not basing his ruling upon a finding that the appellant was guilty of contributory negligence, stating that if the case had reached that point he would have submitted such an issue to the jury.

█ We agree with the view of the District Judge that the evidence was insufficient to sustain the allegations of specific acts of negligence on the part of the appellee. The point involved in this appeal is whether the case should have been submitted to the jury under the doctrine of res ipsa loquitur.

█ It is settled under the Ohio decisions that the doctrine of res ipsa loquitur does not have to be pleaded and that the plaintiff does not waive the right to invoke the doctrine by pleading and unsuccessfully attempting to prove particular acts of negligence. Fink v. New York Central R. Co., 144 Ohio St. 1, 7, 56 N.E.2d 456.

██ It is also well settled under the Ohio decisions that the res ipsa loquitur doctrine is applicable in actions based on negligence on the part of the defendant. Weller v. Worstall, 129 Ohio St. 596, 196 N.E. 637. As stated in Fink v. New York Central R. Co., supra, 144 Ohio St. at page 9, 56 N.E.2d at page 460, " * * * this court has consistently held that the rule of res ipsa loquitur is a rule of evidence which permits the jury, but not the court in a jury trial, to draw an inference of negligence where the instrumentality causing the injury is under the exclusive management and control of the defendant and an accident occurs under such circumstances that in the ordinary course of events it would not occur when ordinary care is observed. It is an evidential inference, not controlling upon the jury but to be considered by it under proper instructions by the court." The rule has been well expressed by the Supreme Court in Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 418, 57 L.Ed. 815, as follows: "In our opinion, res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict."

The District Judge declined to apply the doctrine in the present case because he construed certain decisions of the Ohio Supreme Court as holding that the doctrine was not applicable in a case where all the facts connected with the accident fail to point to the negligence of the defendant as the proximate cause of the injury but show a state of affairs from which an inference could as reasonably be drawn that the accident was due to a cause or causes other than the negligent act of the defendant. Loomis v. Toledo Railways & Light Co., 107 Ohio St. 161, 140 N.E. 639; Cleveland Ry. Co. v. Sutherland, 115 Ohio St. 262, 152 N.E. 726. As pointed out hereinabove, he was of the opinion that it was more reasonably probable that the accident happened because of the gross negligence on the part of the appellant than because of any negligence on the part of the appellee.

We are of the opinion that this was not the proper construction to be given to those cases. The Court was not considering the effect of contributory negligence on the part of the plaintiff, which is not involved in this initial phase of the case dealing only with negligence on the part of the defendant. In the Loomis case, the evidence showed that there was a reasonable probability that the accident was caused by a severe and extraordinary storm amounting to a vis major. In the Sutherland case, in which a pedestrain was injured by broken glass falling from a window of a car of the defendant Railway Company, the evidence showed that the break was such as to justify the reasonable inference that the window was broken by the act of a third person with which the Company had nothing to do. In both cases the Court properly ruled that the res ipsa loquitur doctrine did not apply because the instrumentality causing the injury was not under the exclusive control of the defendant, such facts permitting the reasonable inference to be

drawn that the accident was due to causes other than the negligence of the defendant. This destroyed the fundamental basis upon which the res ipsa loquitur doctrine rests.

 We are of the opinion that the res ipsa loquitur doctrine was applicable in the present case. The equipment in the basement room was under the exclusive control of the appellee. Appellant was properly in the room. The shock received by the appellant, assuming that he did not come in contact with either of the potential transformers, was one that would not occur in the ordinary course of events if the equipment was in proper condition and functioning properly. The facts provide a typical case for the application of the rule. It was for the jury to accept or reject the inference of negligence as well as the inference of probable cause. Jesionowski v. Boston and Maine R. Co., 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416; Detroit Edison Co. v. Ewing, 6 Cir., 122 F.2d 852, 856.

Appellee contends that the doctrine is not applicable because appellee received the shock by coming in contact with one of the potential transformers, in the installation and operation of which appellee was admittedly not negligent. This would be a meritorious argument if it was factually correct, but the evidence does not support it. It is undisputed that appellant received burns from contact with the potential transformer. But the evidence shows that he fell onto the potential transformer *after* receiving the shock through contact with the I-beam. There were only three eyewitnesses to the accident, all of whom testified. Their evidence, referred to hereinabove, does not support appellee's contention.

 The contention that appellee in fact was not negligent in having in operation the equipment which caused the shock, or in not knowing or discovering that a defect existed in such equipment, if one did exist, is a matter of defense, which is not involved in our present problem. The res ipsa loquitur doctrine does not foreclose this defense. If the facts warrant the submission of the case to the jury under the res ipsa loquitur doctrine, such a defense, as well as the issue of contributory negligence, is also submitted to the jury for its consideration. The District Judge was not authorized to rule on such factual issues in considering the motion for a directed verdict. Fink v. New York Central R. Co., supra, 144 Ohio St. at page 12, 56 N.E.2d at page 461; Weller v. Worstall, supra, 129 Ohio St. at page 603, 196 N.E. at page 640.

The judgment is reversed and the case remanded to the District Court for further proceedings consistent with the views expressed herein.