Robert F. RUDDY, Appellee,

v.

NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

NEW YORK CENTRAL RAILROAD COMPANY, Appellee,

v.

ATLAS TACK CORPORATION, Appellant.

No. 318, Docket 23505.

United States Court of Appeals Second Circuit.

Argued May 9, 1955.

Decided June 24, 1955.

Swan, Circuit Judge, dissented in part.

George Gordon Mahley, McElroy, Young, Mahley & Dunn, Syracuse, N. Y., for Robert F. Ruddy.

Willis D. Morgan, Kernan & Kernan, Utica, N. Y., for the New York Central Railroad Co.

George S. Sullivan, Mackenzie, Smith, Lewis, Michell & Hughes, Syracuse, N. Y., for the Atlas Tack Corp.

Before HAND, SWAN and FRANK, Circuit Judges.

HAND, Circuit Judge.

The defendant railroad appeals from a judgment in favor of an employee, the plaintiff, under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., after a trial to a jury. The Atlas Tack Corporation appeals from a judgment in favor of the railroad upon a "third party" claim, brought by the railroad against it upon a contract of indemnity for any judgment rendered against the railroad because of an encroachment upon the railroad's right of way of the wall of one of the Atlas Company's buildings. The railroad's appeal is based upon the plaintiff's failure to prove that his injuries were caused by its negligence; the Atlas Company's appeal is based upon its assertion that the contract did not cover the plaintiff's recovery. The facts were as follows. The railroad had built a spur track from its main line upon the Atlas Company's land, the end of which ran between two buildings of that company. The accident happened in January; and there was evidence that "ice, snow and refuse" had accumulated upon the track which the railroad alleged might have caused the derailment of a car that caused the plaintiff's injuries, as will appear. An engine of the railroad was pushing an empty box car from one of its working tracks along the spur; and Ruddy, the plaintiff, who was the brakeman in this movement, was standing on a ladder at the right hand or northeast end of the car as it moved along the spur. The track curved slightly to the left, or west, a little before it came between the two buildings, and this prevented any view of Ruddy from either side of the engine at the time of the accident. While the car was moving along the spur at a speed of between two and five miles an hour, its forward truck ran off the rails to the right, or east; and, as the engine pushed it along, it continued to go forward over the ground. The derailment took place fifteen and and one-half feet before the car came opposite to the southern corner of the building on the right or east side of the track. The distance between the right or east rail of the track and that corner of the building at that point was 4.75 feet, and the right wheels of the truck had then moved almost exactly a foot away from the right or east track. The overhang of the car beyond the right, or east, wheels of the truck was 3.02, so that, when the car's north end was opposite the southwest corner of the building, the clearance between the car and the wall was only three quarters of a foot, or nine inches, instead of one foot and nine inches, as it would have been if the truck had not been derailed. Ruddy was knocked off the ladder somewhere between the corner and twelve feet further north, where he was found on the ground very badly injured.

The judge charged the jury generally that plaintiff had the burden of es-

tablishing the railroad's negligence, but he did not specify any particular ground of negligence, except that they might base a verdict for the plaintiff upon the mere fact that the front truck had been derailed as it passed over the curve. To that the railroad objected and it is the chief, and indeed the only, question that we need consider upon the railroad's appeal. It turns upon the doctrine that has come down to us in the regrettable phrase—res ipsa loquitur. As an original question we should have found much difficulty in holding that from the bare fact of the derailment an inference might be drawn that the railroad had been negligent in the construction, supervision and repair of the box car. However, it is established for us that the jury might so infer; for the Supreme Court so decided in Jesionowski v. Boston & Maine Railroad Co., 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416. That also chanced to be an action arising from the derailment of a railway car, and the Court reinstated a verdict for the plaintiff after a reversal by the Court of Appeals which had held that the derailment would not alone support the verdict. The Court said, 329 U.S. at pages 457, 458, 67 S.Ct. at page 404, that the question was "whether the circumstances were such as to justify a finding that this derailment was a result of the defendant's negligence. We hold that they were. Derailments are extraordinary, not usual, happenings. When they do occur, a jury may fairly find that they occurred as a result of negligence." An even more extreme aplication of the same doctrine is Johnson v. United States, 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468.

We do not understand that the railroad disputes that it would have been proper to resort to this doctrine, if it had had control over the track where the truck was derailed. It says, however, that it did not have control, because the track ran upon land belonging to the Atlas Company, which that company had agreed to keep "clear of ice, snow and refuse for a distance of 6 feet outside the rails of said track." Since therefore the derailment might have been caused by such an accumulation upon the track, it was wrong to apply the doctrine; for it did not follow that the truck would have left the rails, if the Atlas Company had performed its promise. The plaintiff answers that the railroad had reserved the right to discontinue the service, if the Atlas Company should fail to keep the track clear, and that this kept the track within its control. We agree. It is true that, as between the Atlas Company and the railroad, it was the Company's duty to keep the track clear; but that did not relieve the railroad of its duty towards its employees; and it had the means at hand to discharge that duty. We should be disposed to hold that, even without the reserved privilege of discontinuing service on the spur, the railroad would have had an implied right of entry upon the right of way; but it is enough that the reserved right to discontinue the service upon any default by the Atlas Company was an adequate sanction and continued the responsibility of the railroad attendant upon its control over the locus in quo. Moreover, the jury expressly found in the "third party claim" that the derailment had not been caused by "ice, snow and refuse" on the track; and if that finding should apply equally to the main action, it would make irrelevant the question whether the railroad had that control over the track which is a condition upon the doctrine of res ipsa loquitur; for it clearly had complete control over the box car. We should hesitate a long time to reverse the judgment on the assumption that the jury had not made the same finding on the two claims on the same issue; and there is no ground whatsoever for supposing that in fact they did not. However, for the reasons we have stated we can leave the question open whether the plaintiff might resort to this special finding.

The remaining question is whether the contract of indemnity of the Atlas Company covered Ruddy's judgment. The Company's promise was in these words: the company shall indemnify the railroad "for and from any and all liability * * * arising in whole or in part by

reason of or in any way resulting from the presence or maintenance of structures or obstructions * * * encroaching upon the aforesaid standard clearances." The phrase, "aforesaid standard clearances," refers back to the Third Article of the agreement which, so far as relevant, read as follows: the Atlas Company "except as to the clearances, if any, less than standard shown upon" an attached map, "shall not allow any temporary or permanent obstruction or structure to be constructed or maintained within the space of 6 feet outside the nearest rail of any straight portion of said track, being the standard clearance for structures of the Railroad Company." Where the accident happened, the proper "clearance" was eight inches more than six feet, owing to the curve in the track that we have mentioned. As has already appeared, the wall of the building was not six feet away from the east rail at its southwest corner, but 4.75 feet, and at a point 20 feet north of that corner it was 4.50 feet away; and the judge held that, as Ruddy had therefore been knocked off by an invasion of the "standard clearance," the railroad was liable.

■■■ The first question is whether the contract covered liabilities for all injuries to whose occurrence an encroaching "structure" in fact contributed; or whether it excluded those to whose occurrence that "structure" would equally have contributed, if it had not encroached. In other words, did the contract exclude liabilities for injuries that would have happened, though the wall had been the full "standard clearance" away from the east rail? We think that it did. Suppose, for example, that some fellow-servant of Ruddy had negligently pushed him off the ladder and against the wall; certainly the contract would not have covered the railroad's liability, if it appeared that Ruddy would have been as much injured if the wall had been the proper distance away. The Atlas Company was willing to insure "standard clearance" for the railroad but nothing more. It agreed to assume the risk of

any accident that might happen because the railroad did not have such clearance; but the railroad continued to carry the risks that any invasion of the space did not increase. As we have said, Ruddy was knocked off the car on the curve less than twelve feet from the corner of the building, and the encroachment upon the stipulated "clearance" was six feet, eight inches, less the distance in fact left between the eastern rail and the wall, which was substantially two feet. The wheels of the truck, when the car stopped—66 feet from the corner—, were about one foot eight inches to the east of the rails; and at that point the distance between the wall and the wheels was a little over three feet—the same distance by which the car overhung the track. The corner of the car must therefore have scraped along the side of the wall; and, as we have said, there was testimony to that effect, as well as the evidence of a bent upright pipe, and a scoring along the side of the wall that had not been there before. It is impossible on this record to know whether the car would have touched the wall at all, had the wall been set back two feet; or where it would have touched it if it touched it at all; or what would have been the distance, if any, between the car and the wall, if it never did touch the wall. Indeed it seems highly probable that, if the building had not encroached, the front truck would have continued to move further to the right, and would have knocked Ruddy off the ladder in substantially the same way. Since the evidence does not permit any inference on this issue, the railroad, which had the burden of proving a breach, failed to do so. The special verdict did not cover this failure. The jury answered "yes" to the second question: i. e. whether the accident arose in any part "from the presence of the storage warehouse encroaching on standard clearance"; and also answered "yes" to the fifth question: i. e. whether the accident was caused solely "by the negligent acts or omissions" of the railroad. But nowhere does it appear whether the warehouse would not have played the same part as it did in producing the acci-

dent, if it had not "encroached." The motion of the Atlas Company for a directed verdict at the close of all the evidence should have been granted; but we will not direct a dismissal of the "third party claim," for it is plain that the vital issue was not tried out. Nevertheless, since it is possible that the railroad upon a second trial may again fail on the facts, we will not now discuss the question whether the contract should be construed to cover liabilities arising from the railroad's negligence.

Satisfaction of Ruddy's judgment should of course not await the new trial of the "third party claim."

Judgment affirmed in the action of Ruddy against the railroad.

Judgment reversed and new trial ordered on "third party claim."

SWAN, Circuit Judge, dissenting in part.

I concur in affirmance of the judgment against the railroad. In my opinion the judgment against the Atlas Tack Corporation should also be affirmed.