**Marie M. CREAGH, Administratrix of the Estate of Raymond C. Creagh, also known as Raymond Creagh and Robert Creagh, Deceased, Plaintiff,**

v.

**UNITED FRUIT COMPANY, Defendant.**

United States District Court
S. D. New York,
Civil Division.
March 6, 1959.

**302**

Mortimer Schulman, New York City, for plaintiff, Cantor & Opper, Manfred Ohrenstein, New York City, of counsel.

Thomas H. Walker, New York City, for defendant, William J. O'Brien, New York City, of counsel.

CONGER, District Judge.

Plaintiff moves for a new trial, pursuant to Rule 59 of the Federal Rules of Civil Procedure, 28 U.S.C.A., on the ground that the verdict of the jury in the above matter was against the weight of evidence and on the further ground that the court erred in its charge to the jury.

Defendant opposes, on the ground (a) that plaintiff's counsel did not at the time the jury was charged or when parts of the charge were later read to the jury at their request, object to the charge or take exception to any part of the charge; and (b) that the doctrine of res ipsa loquitur, alleged in plaintiff's moving affidavit to apply, does not apply here and that such a charge was never requested by the plaintiff; and, of course, defendant denies that the verdict of the jury was against the weight of evidence.

Plaintiff's husband was a member of the crew of the S.S. Parismina. He was injured on April 21, 1954. He died prior to the trial of the action of a cause not connected with his injury.

On April 21, 1954 the ship stopped at Balboa to take aboard the President of the Republic of Panama and his Cabinet. A dock-side gangplank was used. It was to be raised and attached by its cleats to the fishplate on the ship—a small ridge into which the cleats of the gangplank would fit. The gangplank was raised by a hi-lo on the dock, under the direction of a dock master. There was conflicting testimony as to whether the directions to the dock master were given by a mate on the ship or whether the raising of a gangplank is considered so routine an operation that the direction of an officer is not required. In any event, it was essential to the operation that someone or more than one person on the ship guide the gangplank to the fishplate, and the testimony of the plaintiff in his deposition was:

"Q-8. Is it usual that you have to jockey the gangway back and forth until you get it into position? A. Yes.

"Q–9. At the time you were injured, you were pushing the gangway out; is that right? A. No, at the time I was injured I was swinging it over to get it in position.

"Q–1. Towards the railing, on the railing, the forward part of the scaffold? A. Too far to one side.

"Q–2. Too far aft? A. Yes.

"Q–3. And you were pulling it forward; is that right? A. Yes."

Plaintiff's husband stated in his deposition that he had been at sea since 1944. If the testimony of the then Chief Mate of the vessel was believed by the jury, that the placing of the gangplank is routine and any seaman can do it, then the plaintiff's husband, in his years at sea, must be presumed to have become familiar with the operation, and he testified in his deposition that he had done that kind of work before.

However, as plaintiff's husband stated in his deposition, he had his left hand half-way up on the gangplank rail, or ¾ way up, and grabbed to pull it over when his hand was squeezed against the upright, he felt pain in his thumb and found that part of his thumb had been amputated.

Plaintiff claims that an insufficient section of rail had been removed, that the mate had given improper directions to the dock master and had improperly supervised the work, that lines should have been attached to the upper ends of the gangplank and should have been used in guiding the gangplank into place instead of having the men hold the upper ends of the gangplank with their hands; that the men on the dock were negligent in the operation of raising the gangplank to its proper place on the deck and, generally, that defendant had not furnished plaintiff's intestate with a proper place to work.

I charged the jury at some length on the negligence question and, among other things, made the statement which is now complained of. In addition, plaintiff's attorney submitted to me some 32 requests to charge, some of which I charged and others I refused to charge.

There were no exceptions to my charge.

After the jury had been deliberating for some time they asked for instructions on the definition of negligence. I then charged on this question practically the same as I had in the main charge. In the charge, among other things, was the portion which is now objected to. There was no exception to this charge. Subsequently, the jury again came before me, stating that they were unable to agree and then the following took place:

"Juror No. 10: I didn't quite understand or I didn't remember in your charge anything about the swinging of the crane having any bearing on the case, I will be perfectly frank to say.

"The Court: I said that the mere fact that it came down and over against—I will give it to you the way I read it.

"What I said was the fact that the gangway swung or that it was dropped is, in and of itself, insufficient to establish liability on the part of the defendant.

"Before the plaintiff is to recover he, the plaintiff, must prove negligence on the part of the defendant or those for whom the defendant is responsible.

"Juror No. 5: Do you want to try it again?

"Juror No. 10: All right, let's try it again.

"Mr. Ohrenstein: Your Honor, may I make a—

"Mr. O'Brien: Your Honor, if we are going to have colloquy I would like to have it outside of the hearing of the jury.

"Mr. Ohrenstein: May we approach the bench, your Honor?

"The Court: Yes.

(The following proceedings took place at the bench outside the hearing of the jury:)

"Mr. Ohrenstein: Well, I think this apparently is the crux of the case, but I think, then, that there should be a complete charge on the question of what is to be taken into consideration.

"The Court: Oh, no.

"Mr. Ohrenstein: And now you have left them with the impression that that alone, the swinging of the gangway alone is not proof of negligence.

"The Court: That is right.

"Mr. Ohrenstein: First of all I would except to that.

"Mr. O'Brien: It was not excepted to originally.

"The Court: That is all right.

"Mr. Ohrenstein: I except to the recharging of that alone as not being sufficient proof of negligence, and I ask your Honor to give a complete charge on the question of what constitutes negligence.

(The following proceedings took place in open court:)

"The Court: You understand that I said that there must be other negligence, and you must find negligence in showing why it came over. Is that understood?

"The Foreman: Yes. The basis is on the—well, I would say the word negligence, and there has been absolutely no change in the thinking on that question of negligence.

"The Court: And you understand what I told you about the other negligence that is claimed by the plaintiff, I mean lack of space, and the failure of the chief officer to give proper instructions, and the fact that—

"The Foreman: Well, we have discussed the broad claim of negligence.

"The Court: You have discussed all the claims presented by the plaintiff by way of negligence, is that right?

"The Foreman: Yes, but we cannot agree on the exact definition of negligence.

"The Court: All right.

"Juror No. 2: Your Honor, I think it was not clear in the jury room before that you had charged us that the forward swing of the gangway alone is not proof of imprudent operation of the crane, and this was the question that we were primarily debating, and if this has now been presented more precisely I think we should go back again.

"The Court: All right.

"Mr. Ohrenstein: Your Honor, I would like to make a request for a charge here then before the jury retires.

"The Court: You understand what I told you the plaintiff's claim for negligence was, all of the claims that he made?

"The Foreman: Yes, the claims that he made, yes.

"Mr. Ohrenstein: Well, may I submit a request to you for a charge?

"The Court: What is the request?

"Mr. O'Brien: Outside of the hearing of the jury, your Honor?

"The Court: Wait a minute. Let him make his request.

"Mr. Ohrenstein: May we do this outside of the hearing of the jury?

"The Court: No, do it right here.

"Mr. Ohrenstein: Well, I would like to request that the jury be charged that if, as your Honor charged before, the swing of the crane alone, while that perhaps in your charge was—

"The Court: I said alone, and I used the word 'alone' every time I referred to it.

"Mr. Ohrenstein: —that the jury must take into consideration all of the circumstances surrounding that particular occurrence, and if together with all the circumstances that surround this particular occurrence, plus the swinging of the crane, if that raises with them a conclusion that there was negligence on somebody's part, on someone's part, that they can conclude from the swinging of the crane together with all the other circumstances that the defendant here was negligent.

"The Court: I so charge the jury.

"Mr. O'Brien: Your Honor, I take an exception to allowing counsel to argue in front of the jury.

"The Court: He did not argue it; he told me just what I would have said, counselor."

Furthermore, it was the testimony both of the plaintiff and the defendant that the gangplank invariably swung about and was "jockeyed" into position by crew members, so that no objection could properly be taken to that portion of my charge, taken out of context.

It occurs to me now that it would have been better not only to state the facts categorically but to add some explanation. But this actually was done by plaintiff's attorney and I stated in response to his request "I so charge the jury."

There was no further exception on the part of plaintiff's attorney and the jury retired.

Rule 51, F.R.C.P., states in part:

"No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

See Kane v. American Tankers Corporation of Delaware, 2 Cir., 219 F.2d 637, 640, and Moore v. Waring, 2 Cir., 200 F.2d 491, 492.

█ Plaintiff urges that the doctrine of res ipsa loquitur applied in this case.

Firstly, the case was not tried on that theory, and, secondly, no request that the jury could infer from the mere swinging and falling of the gangway that someone under the defendant's control was negligent was submitted to me by plaintiff's attorney.

San Juan Light & Transit Co. v. Requena, 224 U.S. 89, 98, 32 S.Ct. 399, 401, 56 L.Ed. 680, defines res ipsa loquitur:

"[W]hich is, when a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as in the ordinary course of things does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care."

A leading case is Johnson v. United States, 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468, which was brought under the Jones Act, 46 U.S.C.A. § 688. The plaintiff there, a seaman, was on the main deck, rounding in two blocks. One block was attached to the outer end of the boom by a wire rope. The other block was being held by a shipmate, who stood above plaintiff. Plaintiff was taking in the slack by pulling on the free end of the rope which ran through the two blocks. As he pulled, the two blocks were brought together. Then the two men had to walk forward at a rate of speed governed by plaintiff. There was only a partial account of the injury, supplied by plaintiff, the other seaman not having been called. The block which it was the other seaman's duty to hold, fell, hitting plaintiff on the head. It is not certain why the block fell. He was hit without warning, while bending over coiling the line on the deck.

The court said that the uncontradicted evidence was that plaintiff was not pulling on the rope; that [referring to the other seaman] a man who is careful does not ordinarily drop a block on a man working below him; that where, as in that case, the injured person is not im-

plicated, the falling of the block is alone sufficient basis for an inference that the man who held the block was negligent.

This is clearly distinguishable from the instant case, where the injured person [the plaintiff's intestate here] was clearly implicated, the operation in which he was engaged was routine, and there was testimony by the defendant that a fellow seaman working with the plaintiff's intestate told him to remove his hand from where he had placed it. The operation cannot be said to have been under the exclusive control of the defendant, since, according to the evidence both on the part of the plaintiff and the defendant, it was necessary for at least two seamen to participate in the operation by jockeying the gangplank into position on the deck, placing its cleats on the fishplate, and plaintiff's intestate was one of those seamen.

I have not the typewritten testimony before me, but my notes indicate that plaintiff's intestate testified: "We had a certain amount of control over the gangway."

Jesionowski v. Boston & M. R. R., 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416, is not applicable here either. In that case the court stated that the jury might have found that the accident happened as the result of the negligence of the deceased, but the jury not being satisfied as to this and with the deceased free from any negligent conduct, there is then left an accident ordinarily the result of negligence that may be attributed only to the lack of care of the Railroad. The court then said that once a jury, having been appropriately instructed, finds the employee's activities did not cause the derailment, the defendant remains the exclusive controller of all the factors which may have caused the accident (329 U.S. at page 458, 67 S.Ct. 401).

The facts in the Jesionowski case, in which the above ruling was made, differ greatly from the facts in this case and the principles of law there enunciated do not apply here.

Of course I do not know what was in the minds of the jurors except as stated before me. They may not have given plaintiff's case full credence. For instance, one of the witnesses for plaintiff was a man named Brough, who said he was working with plaintiff's intestate at the time of the accident. In this he was contradicted by the chief mate, who stated that a seaman named Nixon was the only one working with plaintiff's intestate. Nixon testified that he alone was working with plaintiff's intestate. He testified that plaintiff's intestate had one hand on the gangway and one hand on the rail; that he, Nixon, told plaintiff's intestate to take his hand off the rail, but before he did the gangway swung and caught his hand. Nixon stated that it was not good seamanship for plaintiff's intestate to put his hand on the rail. Then, on plaintiff's side, there was considerable testimony that the Chief Mate was right at the gangway and gave instructions as to how the work was to be done. The Chief Mate denied this and stated that he gave no instructions to the men; that it was a routine job and needed no officer to direct it; that he was not down with the men doing the work, but was in the wheelhouse; that all he did was to call for the two men to do the work and that the two men were plaintiff's intestate and Nixon, not Brough.

The jury might well have decided that plaintiff had failed to meet the burden of proving her case, i. e., negligence of defendant and of those handling the hi-lo.

And the jury might very well have found the defendant negligent but, this being a case where the comparative negligence rule applied, might have found that the plaintiff's negligence equaled the negligence of the defendant and that, therefore, defendant was entitled to a verdict.

 Plaintiff also seeks a new trial on the ground that the verdict of the jury was against the weight of the evidence.

The substantial contradiction in this case was as to the seaman who assisted plaintiff's intestate in placing the gangplank and the credibility of the testimony of such seaman. As I stated before, a Mr. Brough testified for the plaintiff and said that he assisted the plaintiff's intestate in the operation; the deposition of a Mr. Nixon was read, he stating that he was the seaman who assisted the plaintiff's intestate and told him to move his hands from the rail. (See other conflicts supra.) It was for the jury to evaluate this conflicting testimony.

This aspect of plaintiff's motion is addressed to my discretion. I cannot set the verdict aside as against the weight of the evidence merely because, if I had acted as a trier of the fact, I would have reached a different result. Moore's Fed. Practice, 2d ed., Par. 59.08 [5], p. 3818; Caldwell v. Southern Pac. Co., D.C.S.D. Cal.1947, 71 F.Supp. 955, 962; Lyophile-Cryochem Corp. v. Cutter Laboratories, D.C.N.D.Cal.1948, 78 F.Supp. 903, 904. Furthermore, the credibility of witnesses is peculiarly for the jury and it would be an invasion of the jury's province to grant a new trial merely because in some respects the evidence was sharply in conflict. Moore's Fed.Practice, Par. 59.08 [5], p. 3819.

As further stated in Moore's Fed. Practice, p. 3819, I should view the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts; and abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. "The judge's duty is essentially to see that there is no miscarriage of justice. If convinced that there has been then it is his duty to set the verdict aside; otherwise not."

Plaintiff's motion is denied; submit order.