Gerald A. SANTILLO, Plaintiff,

v.

PENN CENTRAL TRANSPORTATION COMPANY, Defendant.

Civ. A. No. 5–72 ERIE.

United States District Court,
W. D. Pennsylvania.

Nov. 22, 1972.

Thomas L. Cooper, Pittsburgh, Pa., for plaintiff.

Aloysius F. Mahler, Pittsburgh, Pa., for defendant.

## OPINION

WEBER, District Judge.

This case was brought under the Federal Employers Liability Act and was

tried to the court without jury. At the time of the accident plaintiff was engaged in his employment for the defendant, a common carrier of freight for hire by rail engaged in interstate commerce. The court has jurisdiction under the above act.

On June 1, 1971, the plaintiff was working for the defendant as a yard brakeman on the third shift in the defendant's yard at Ashtabula, Ohio. At that time he was engaged in switching operations in the defendant's Harbor Yard at a location where empty coal gondola cars were shunted by gravity after being unloaded at a mechanical dumper. After leaving the dumper the cars passed down a decline and were automatically classified and switched onto one of eight parallel assembly tracks. The plaintiff with his fellow workers had finished the coupling of the assembled gondolas on switch track No. 5, and then the plaintiff proceeded alone to the north end of switch tracks No. 1 and 2. The plaintiff's assignment was to see that the empty cars standing on track No. 2 were properly coupled so that they could be removed from the track. There were about twenty-five cars standing on track No. 2 which was on plaintiff's left side as he proceeded between tracks 1 and 2 in a southwardly direction. On track 1 which was on his right side there were three empty gondola cars near the north end of that track which had been "anchored" so that additional empty cars could be shunted onto this track by gravity and effect a coupling by coming into contact with the "anchored" cars whose brakes had been set. As plaintiff was proceeding southwardly inspecting the cars on track No. 2 for couplings, he came to a point opposite the southernmost end of the three anchored cars on track No. 1 and turned to examine the coupling between the cars at this point. At this time additional empty cars were moving in on track No. 1. As plaintiff was examining the coupling he heard a crash and something struck him on the right side of his head. The plaintiff was dazed for short period, sank to his knees, and then looked around in an effort to determine what hit him. Plaintiff could see pieces of coal and pieces of metal on the ground in the area but he could identify nothing which had struck him at the time. Plaintiff then proceeded along the tracks to the retarder shed where he found fellow employees who took him to a first aid station.

The plaintiff's complaint makes no specification of the particular negligence with which the railroad is charged. In fact, the plaintiff's complaint does not allege any negligence on the part of the railroad. The plaintiff's pretrial narrative statement, required by the rules of this court, alleges specifically that the defendant failed to provide plaintiff with a reasonably safe place in which to work, that the equipment being utilized on No. 1 track was not in reasonably safe condition and that the defendant failed to warn the plaintiff of the movements being made on No. 1 track. The pretrial statement, in addition, contends that the doctrine of res ipsa loquitur applies, since the instrumentalities in operation around the plaintiff were owned and under the control of the defendant, and that an inference of negligence arises from the circumstances of the accident. At trial the plaintiff did not attempt to prove any specific negligence but relies on his testimony that the gondola cars, after being emptied at the dumper, frequently contained loose pieces of coal which are jarred loose in the coupling operation. Plaintiff further relies on the evidence that an empty car was in fact moving on No. 1 track at the time and collided with the "anchored" car at the same moment that he felt the blow on the head.

There is no doubt but that plaintiff suffered an injury at work. This is not contested by the defendant railroad. He was taken to the emergency room of a local hospital where a bandage was applied to the laceration of the scalp and an anti-tetanus injection was given. He

then returned to his place of work where he remained until the end of the shift. His only attempt to secure medical relief from any symptoms that he may have suffered was a visit to his family doctor three days later where the wound was examined and he was instructed to take Excedrin (a proprietary non-prescription aspirin compound) for any discomfort. He was examined by an orthopedic physician on July 9, 1971 on behalf of plaintiff's counsel who secured a report that the plaintiff had suffered a cervical sprain and the prognosis for recovery was excellent. He did not return to work but in September 1971 re-entered Kent State University for the fall quarter, lasting until December 1971.

■ Liability for injuries to an employee under the Federal Employers Liability Act must be based upon a finding of negligence by the employer.

"The Act does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur. And that negligence must be 'in whole or in part' the cause of the injury." (p. 653, 67 S.Ct. p. 600)

Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572 [1947]. Gill v. Pennsylvania R. Co., 201 F.2d 718 [3rd Cir. 1953].

The plaintiff here has presented no evidence of negligence but argues that the inference of negligence permissible under the res ipsa loquitur doctrine was sufficient to justify with reason a finding that the defendant was negligent. Basham v. Pennsylvania R. Co., 372 U.S. 699, 83 S.Ct. 965, 10 L.Ed.2d 80 [1963]; Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 [1957]; Jesionowski v. Boston & Maine R. Co., 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416 [1947].

■ The evidence from which plaintiff wishes us to draw an inference of negligence are the facts that the only piece of equipment moving at the time of the accident in the vicinity of plaintiff was the empty gondola car drifting forward on track No. 1 to couple with the stationary cars already "anchored" there; the fact that the empty cars moving on these switching tracks had been dumpd of their cargo of coal; the fact that these empty cars sometimes carried loose pieces of coal which had not fallen out in the dumping operations; and the fact that pieces of coal were observed on the ground in the area where these empty cars were assembled; and the fact that plaintiff was struck at the same time that the moving empty car connected with the anchored stationary cars near where plaintiff was standing. The inference that we are asked to draw is that in the dumping operation the defendant failed to take the precaution of seeing that no loose pieces of coal remain in the gondola car as it passes out of the dumper and down the incline which would be dislodged and fly about at the peril of the defendant's employees when the moving empty car makes contact with the stationary car with the force necessary to effect a coupling. In such a case "the circumstances of the occurrence that has caused the injury are of a character to give ground for a reasonable inference that if due care had been employed by the party charged with care in the premises, the thing that happened amiss would not have happened. In such cases it is said, res ipsa loquitur—the thing speaks for itself; that is to say, if there is nothing to explain or rebut the inference that arises from the way in which the thing happened, it may fairly be found to have been occasioned by negligence." Sweeney v. Erving, 228 U.S. 233, 238–239, 33 S.Ct. 416, 417, 57 L.Ed. 815 [1913]. Under the circumstances of this case we find that the evidence permits a finding of negligence which has not been explained or rebutted and we, therefore, find that the defendant was guilty of negligence in its failure to see that the equipment being used on track No. 1 was in reasonably safe condition.

■ There is no contention that the plaintiff violated any of the safety regulations of the railroad company or that he was guilty of contributory negligence in any degree. The evidence of damages in this case is also lacking in precision. It is not contested that plaintiff received a laceration to the scalp by a blow from some object which caused him to be dazed momentarily but nevertheless permitted him to walk to the nearby shed from which he was taken to the emergency room of the hospital. No physician saw him there but the laceration was bandaged without sutures and plaintiff was given a tetanus shot. He returned to his place of employment during the same shift but did no further work. He did not report for work on the next day, June 2, but on June 3, his family physician examined the wound and advised him to take Excedrin tablets. On June 4 he failed to keep an appointmnt arranged for him with the company physician. On June 9 pursuant to a registered mail notice from the employer, he visited the company physician but no results of this examination were produced in evidence. On July 9, by appointment made through his attorney, he was examined by an orthopedic surgeon in Pittsburgh, Pennsylvania, about 125 miles away from his home. The orthopedic surgeon found evidence of muscle spasm in the cervical region and by x-rays noted a straightening of the normal cervical curve. He concluded that the plaintiff had suffered a sprain of the cervical spine and his prognosis was excellent for recovery. This physician testified that on the basis of this finding he would expect recovery of such an injury in a period of three to six months. There is no evidence that plaintiff sought any other medical examination or treatment for his injury thereafter. The court excluded evidence of visits to the Pittsburgh attorney's physician for evaluation of ability to return to work because these were made after the case was listed for pretrial and trial, were not reported in the pretrial narrative and are barred by the pretrial rules of this court. In any event, the Pittsburgh physician admitted to the court that he had no means of knowing when the plaintiff had actually recovered sufficiently to return to work.

The evidence shows that the history of plaintiff's employment by the defendant railroad since 1962 was sporadic and seasonal. During this time plaintiff had been attending Kent State University, had received a degree in education and had been engaged in teaching. Only in the year prior to the accident had the plaintiff worked for the railroad with regularity. The evidence further showed that plaintiff returned in September 1971 to Kent State University for the fall 1971 quarter to continue his education. There is no evidence of any attempt by the plaintiff to seek to return to employment by the railroad. The plaintiff was vague and inconsistent in the testimony as to the nature and extent of his injuries or disability. We conclude that he was disabled from returning to work at the railroad after his accident for a period of three months. His average wage for the months immediately preceding the accident was $700 per month. His pain, suffering and inconvenience was not sufficient as to compel him to seek medical assistance or to employ any remedies except Excedrin tablets.

■ We conclude on the basis of the evidence that the plaintiff has been damaged to the extent of $2,400.

The above opinion shall constitute the findings of fact and conclusions of law in the above case heard before the court without a jury.

A judgment will be entered accordingly.